******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CATHERINE A. PROCACCINI *v.*
MATTHEW PROCACCINI
(AC 36501)

Alvord, Sheldon and Keller, Js.

*Argued March 5—officially released June 16, 2015*

(Appeal from Superior Court, judicial district of
Danbury, Winslow, J.)

*Matthew Procaccini*, self-represented, the appel-
lant (defendant).

*Catherine Procaccini*, self-represented, the appellee
(plaintiff), filed a brief.

*Opinion*

ALVORD, J. The defendant, Matthew Procaccini, appeals from the trial court's decision modifying the parties' financial orders, postjudgment. On appeal, the defendant claims that the court abused its discretion when it (1) relied on his gross income rather than his net income in its December 16, 2013 decision modifying the previously agreed upon alimony order, (2) relied on his gross income rather than his net income in its May 13, 2014 denial of his motion to modify the previously modified alimony order, and (3) "placed [the majority of gross income] in control of the plaintiff while the defendant is required to pay his self-employment taxes and other expenses from his remaining gross income" and "made future modification hearings almost impossible . . . leav[ing] a future court lacking the ability to compare changes in available net income." We agree with the defendant's first and second claims and reverse the judgments of the trial court.[1]

The following facts and procedural history are relevant to the defendant's appeal. The marriage of the parties was dissolved by judgment of the court on December 18, 2009. A stipulated agreement relative to financial issues was incorporated into the dissolution judgment. The agreement provided that the amount of alimony paid by the defendant to the plaintiff, Catherine A. Procaccini, would be $1826.92 weekly for the first 130 weeks following the dissolution. After the first 130 weeks, the amount of alimony paid by the defendant to the plaintiff would be $1538.46 weekly. Alimony would terminate entirely in 2020. In February, 2012, the defendant filed the parties' first motion for modification to reduce the agreed upon alimony order, alleging that a substantial change in circumstances had occurred, because he had been terminated from his employment and his noncompete payments were to expire that month. The parties again entered into a stipulation, which provided for the reduction of alimony from $1538.46 to $500 weekly during his period of unemployment. Among other provisions, the stipulation provided that the defendant would inform the plaintiff within 72 hours of any employment offers. The defendant subsequently notified the plaintiff of entering into a consulting agreement, which would result in his earning $10,000 monthly.

Consequently, on October 22, 2013, the plaintiff filed the parties' second motion for modification to increase the order of alimony established during the defendant's unemployment. After the December 16, 2013 evidentiary hearing during which the parties supplied financial affidavits, the court issued an order finding that the defendant "now has $10,000.00 a month in gross income." The court granted the plaintiff's motion, increasing the alimony payable to the plaintiff from $500 to $910 weekly, effective October 11, 2013. The

defendant filed a motion to reargue, claiming, inter alia, that the court improperly used the defendant's gross business income without considering the business expenses he incurred while working as a self-employed consultant. The defendant argued in his motion to reargue that his income after business expenses should have amounted to $100,000, not $120,000, yearly. The motion to reargue was denied by the court on January 7, 2014. On January 22, 2014, the defendant filed an appeal from the increase in his alimony order.

On February 19, 2014, the defendant filed the parties' third motion for modification, to reduce the order of alimony. The court denied the defendant's motion after holding an evidentiary hearing on May 12 and 13, 2014.[2] In its denial, the court found that "there ha[d] been a 10 [percent] decrease in the defendant's gross income.[3] Under all circumstances, this is not a substantial change in circumstances which would warrant a change in the current alimony order." The defendant thereafter filed an amended appeal.

The defendant claims that the court improperly relied on his gross income rather than on his net income in its December 16, 2013 decision modifying upward the alimony order, and also in its May 13, 2014 denial of the defendant's motion for a downward modification. We agree.

We first set forth the standard of review applicable to a court's decision regarding financial orders. "We review financial awards in dissolution actions under an abuse of discretion standard. . . . In order to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *Ludgin* v. *McGowan*, 64 Conn. App. 355, 357, 780 A.2d 198 (2001).

We next turn to the applicable law governing this matter. "[I]t is well settled that a court must base its child support and alimony orders on *the available net income of the parties, not gross income.* . . . Whether an order falls within this prescription must be analyzed on a case-by-case basis. Thus, while our decisional law in this regard consistently affirms the basic tenet that support and alimony orders must be based on net income, the proper application of this principle is context specific." (Citation omitted; emphasis added; internal quotation marks omitted.) *Medvey* v. *Medvey*, 98 Conn. App. 278, 282, 908 A.2d 1119 (2006). "[W]e differentiate between an order that is a function of gross income and one that is based on gross income. . . . [T]he term 'based' as used in this context connotes an order that only takes into consideration the parties' gross income and not the parties' net income. Consequently, an order that takes cognizance of the parties' disposable incomes may be proper even if it is expressed as a function of the parties' gross earnings."

*Hughes* v. *Hughes*, 95 Conn. App. 200, 207, 895 A.2d 274, cert. denied, 280 Conn. 902, 907 A.2d 90 (2006).

We consider first the court's ruling on the plaintiff's motion for modification to increase the order of alimony from the unemployment based alimony order. In rendering its decision, the court stated: "[The defendant's] compensation has changed dramatically since [the date of the current stipulated court order], at which time he did not have an income from his work endeavors. He now has compensation at the rate of $10,000 per month gross and that's clearly a major change so we get over the threshold of having to show a substantial change in circumstances. This brings us back to the provisions of [General Statutes §] 46b-82 and what should the alimony be at this point." The court then increased the alimony payable to the plaintiff from $500 to $910 weekly.[4] At no time in granting the modification and establishing a new alimony order did the court make any findings as to the parties' net incomes.[5] Furthermore, when the defendant's counsel inquired during the May, 2014 hearing occasioned by the defendant's motion for downward modification of alimony, whether the court would be making findings as to net income, the court stated: "It hasn't changed, except for 10 percent off the gross. *I only found the gross income in December. I'm finding that the gross income is now nine thousand*, and it's not a substantial change."[6] (Emphasis added.) In so finding, the court carried forward the error made in the December, 2013 hearing by using the gross income found in that hearing as a starting point for the determination as to whether the defendant had shown a substantial change in circumstances at the time of the May, 2014 hearing. The court stated that "the actual change, since December 16, 2013, is a change of ten percent. That is to say, on the gross income of [the defendant]. His income of ten thousand a month is down to nine thousand a month, gross."[7] Thus, there was no consideration of the defendant's net income at either contested modification hearing.

Our review of the record reveals that the court's upward modification of alimony on December 16, 2013, and also its denial of the motion for downward modification on May 13, 2014, were based improperly on the defendant's gross income.[8] The present circumstances are similar to those in *Morris* v. *Morris*, 262 Conn. 299, 306, 811 A.2d 1283 (2003), in which our Supreme Court reversed the judgment of the trial court, concluding that it had abused its discretion because it "affirmatively and expressly stated that it relied on gross income to determine available funds for support consideration." See also *Keller* v. *Keller*, 141 Conn. App. 681, 684, 64 A.3d 776 (2013) (holding that the court abused its discretion in basing its orders solely on the defendant's imputed gross income); *Ludgin* v. *McGowan*, supra, 64 Conn. App. 358 (concluding that the trial court's financial orders were improper, noting that "[i]n its

memorandum of decision, the court repeatedly referred to and compared the parties' gross incomes"); cf. *Medvey* v. *Medvey*, supra, 98 Conn. App. 283–84 and n.5 (concluding that the court did not abuse its discretion, because although the order directed the defendant to pay 18 percent of his gross income, it explained that the "flat percent will simplify the determination of the amount of alimony due" and the original agreement between the parties had provided that all of the defendant's earned income would be subject to the plaintiff's alimony rights). We thus conclude that the court incorrectly applied the law in its modification decisions of both December 16, 2013, and May 13, 2014, by basing its financial orders solely on the defendant's gross income, rather than basing its orders properly on net income.

The judgments are reversed and the case is remanded to the trial court for a new hearing on both motions for modification.

In this opinion the other judges concurred.

[1] Because we conclude that a new hearing is warranted on the basis of the defendant's first and second claims, we need not reach his third claim.

[2] The same judge presided over both the December, 2013 and the May, 2014 modification hearings.

[3] The defendant's gross income as a self-employed consultant had decreased from $10,000 to $9000 monthly.

[4] The plaintiff was not working at the time of the dissolution and continued as such throughout the postjudgment proceedings. In the stipulation incorporated into the dissolution judgment, the parties agreed on the plaintiff's "earning capacity of $30,000 per year."

[5] The court had before it the parties' financial affidavits. The defendant had listed estimated taxes as a deduction from his gross income on his financial affidavit. The financial affidavit submitted by the defendant for consideration during the December, 2013 hearing did not list business expenses, and he did not present evidence of any unreimbursed business expenses at that hearing. The defendant did, in response to a question posed by the plaintiff's counsel, testify as to certain business expenses that were paid by the company with which he worked as a consultant. "It is axiomatic that an award of alimony and support must be based on net income after taxes, not gross income." *Keller* v. *Keller*, 141 Conn. App. 681, 684, 64 A.3d 776 (2013).

[6] The following additional colloquy also occurred:

"[The Defendant's Counsel]: The only things I can find regarding income, in the court's findings [from the December 16, 2013 transcript] are the ten thousand gross per month. I couldn't find a net number. I don't know if the court wished to review the transcript, at all. You brought it up yesterday, Your Honor, is the only reason I'm bringing it to the court's attention, besides the basis to start from.

"The Court: That's consistent with my understanding of the order, as well. So I think—I don't question your representation."

[7] In response, counsel for the defendant attempted to have the court consider the defendant's alleged business expenses and his self-employment tax, which, if accepted, would reduce his net income available to pay alimony. Counsel for the defendant asked the court: "But don't we have to—to determine whether there's change dealing with net income, instead of gross income?" The court replied: "We have to determine whether there's been a substantial change. And I say there hasn't."

[8] The cases cited by the plaintiff in her brief are factually distinct from the present case. In *Hughes* v. *Hughes*, supra, 95 Conn. App. 207, this court concluded that the trial court had not abused its discretion in referring to the plaintiff's gross income, because it did not rely on the plaintiff's gross earnings as the basis of the order, but rather had "merely referred to the plaintiff's gross income to demonstrate his ability to pay support." It further noted that the trial court had made repeated references to the parties' financial affidavits and also had considered tax returns, which showed both gross and net income. Id., 206–207. In *Kelman* v. *Kelman*, 86 Conn. App.

120, 123, 860 A.2d 292 (2004), cert. denied, 273 Conn. 911, 870 A.2d 1079 (2005), this court also held that the trial court did not abuse its discretion in fashioning its financial orders, noting, inter alia, that "the court's memorandum of decision specifically stated that it was relying on 'all of the relevant information,' including the parties' financial affidavits and their child support guideline worksheets, both of which included the parties' net incomes, as well as the testimony of the parties."

––––––––––––––––––––––––